UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO ARRELLANO, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>SONOMA COUNTY, et al.,<br><br>    Defendants. | Case No. 23-cv-00187-DMR<br><br>**ORDER ON SECOND MOTION TO DISMISS**<br>Re: Dkt. No. 53 |

  Plaintiffs Francisco Arrellano and his minor son S.A., by and through his guardian ad litem Arrellano, filed a first amended complaint ("FAC") against Defendants Sonoma County and Deena Mistry. [Docket No. 52 (FAC).] Defendants now move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). [Docket No. 53 (Mot.).] The court held a hearing on April 11, 2024. For the following reasons, the motion is granted.

**I. BACKGROUND**

  This action was removed from Sonoma County Superior Court on January 13, 2023. [Docket No. 1.] Defendants moved to dismiss the complaint on February 21, 2023. [Docket No. 11.] The court granted the motion with leave to amend on July 13, 2023. [Docket No. 34.] At the July 13, 2023 motion hearing, the court ordered that in the FAC, Plaintiffs had to allege whether and how they complied with the Government Claims Act, including specific facts explaining the history of their claim presentation to Sonoma County and the dates of the alleged events giving rise to their claims. *Id.* The court also ordered Plaintiffs, if they planned to assert a *Monell* claim in the FAC, to clearly allege the ways in which Mistry violated the Constitution and identify the specific theory or theories of *Monell* liability under which Sonoma County is liable for Mistry's alleged actions. *Id.* On February 16, 2024, Plaintiffs filed the FAC. [Docket No. 52.]

  Plaintiffs make the following allegations in the FAC, all of which are taken as true for

purposes of this motion.[1]  Arrellano is S.A.'s father and shares joint legal and physical custody of him with S.A.'s mother.  FAC ¶ 1.  Deena Mistry was a social worker employed at the Sonoma County Department of Health and Human Services ("DHHS") to investigate child dependency and child custody issues within the County of Sonoma.  *Id.* at ¶ 8.  Sonoma County is the government entity that owned, operated, and controlled DHHS and employed Mistry.  *Id.* at ¶ 7.  Plaintiffs complain that Defendants wrongfully caused Arrellano to lose custody of S.A. between June 10, 2021 and October 22, 2021.  *Id.* at ¶ 24.

In June 2021, Arrellano enjoyed shared custody over S.A. with S.A.'s mother, Chelsea Malen, and lawfully had S.A. for overnight visits each weekend and every alternating Thursday.  *Id.* at ¶ 11.  Around June 2, 2021, Malen reported to DHHS that S.A. was vomiting due to anxiety and that his anxiety was caused solely by Arrellano.  *Id.* at ¶ 15.  However, Arrellano alleges that Malen caused S.A.'s anxiety and that Malen's report to DHHS was false and retaliatory against Arrellano.  *Id.* at ¶¶ 12-14.  Mistry interviewed Arrellano on June 10, 2021.  *Id.* at ¶ 18.  Mistry did not have probable cause that Arrellano had emotionally abused S.A.  *Id.* at ¶¶ 18, 20.  Despite this, Mistry attempted to coerce Arrellano into submitting to family counseling by threatening to take away his parental rights over S.A. if he failed to sign the family counseling form.  *Id.* at ¶ 19.  Mistry did not inform Arrellano that if he agreed to counseling and failed to appear, his parental rights would be immediately taken away.  *Id.*  Although this is not clear in the FAC, at the April 11, 2024 hearing Plaintiffs clarified that Arrellano did not sign the family counseling form.  Arrellano also asserts that Mistry failed to provide him with information and mandatory disclosures related to family counseling, including the Your Rights and Family Resources Brochure, Counseling and Psychological Services forms, and the disclosures page of the family counseling form.  *Id.*

Following the June 10, 2021 interview, Mistry did not make a finding of abuse.  *Id.* at ¶ 20.  Instead, she created a "Safety Plan" which "denied [Arrellano] the right to have his overnight visits with [S.A.] for at least 30 days and denied [Arrellano] custody of [S.A.] for 30 days."  *Id.*

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

Mistry also gave Malen a referral to Legal Aid to assist Malen in "filing an emergency petition to take custody and visitation away from" Arrellano. *Id.* at ¶ 21. Arrellano subsequently lost his right of custody and visitation to S.A. from June 10, 2021 to October 22, 2021. *Id.* at ¶ 24. Plaintiffs allege that the Safety Plan violated Arrellano's right to a hearing within 72 hours upon being deprived of his parental rights. *Id.* at ¶ 20.

Plaintiffs allege that Mistry's conduct is part of a pattern of discrimination by Sonoma County and its employees against men. FAC ¶ 22. Plaintiffs assert that Mistry did not attempt to coerce Malen into family therapy because Malen is a woman. *Id.* at ¶ 19. Plaintiffs also assert that Mistry gave Malen the Safety Plan and a referral to legal services but did not give Arrellano any support or referrals because Arrellano is a man. *Id.* at ¶¶ 20-21.

Plaintiffs allege that Arrellano complied with the Government Claims Act by filing a claims form against Defendants on April 26, 2022. FAC ¶ 26. Although the form was filed beyond the six-month deadline running from June 10, 2021, Plaintiffs argue that the claims are nevertheless timely because they were filed "within six months of Plaintiff Arrellano obtaining investigative reports and thereafter, knowing and/or having reason to know that Defendants were a substantial factor in causing him to lose custody of" S.A. *Id.*

Plaintiffs plead three claims for relief: (1) negligence, (2) violation of the Unruh Act, and (3) violation of the Fourteenth Amendment under section 1983. *Id.* at ¶¶ 27-36.

## II.   LEGAL STANDARDS FOR RULE 12(B)(6) MOTIONS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,' " *id*. at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). However, leave to amend may be denied where the complaint "could not be saved by any amendment," i.e., "where the amendment would be futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc*., 368 F.3d 1053, 1061 (9th Cir. 2004).

**III.     DISCUSSION**

    **A.     Government Claims Act**

Defendants argue that Plaintiffs' state law claims for negligence and violation of the Unruh

4

Act are time-barred because Plaintiffs failed to allege compliance with the claim presentation requirements of the Government Claims Act. *See* Cal. Gov. Code § 900 et seq.

      Before filing suit for money or damages against a California public entity, a person must first show that they presented their claim to the public entity and the public entity acted on or rejected the claim, except under certain exceptions inapplicable here. Cal. Gov. Code § 945.4; *State of Cal. v. Superior Ct. (Bodde),* 32 Cal.4th 1234, 1239 (2004). The claim requirement applies to suits against public employees as well as to public entities. *Massa v. S. Cal. Rapid Transit Dist.*, 43 Cal. App. 4th 1217, 1222–23 (1996) ("[T]he same statute of limitations bar to suits against a government employee for conduct within the course and scope of employment . . . applies to suits against the employing entity on the theory of respondeat superior culpability based on the employee's negligence."); Cal. Gov. Code § 950.6 (stating that, when a written claim for money or damages for injury has been presented to the employing public entity, the public employee who caused the injury cannot be sued except if the suit is brought within six months after the claim is rejected by the public entity).

      A government claim for a personal injury must be presented to the public entity within six months of accrual; a claim for any other cause of action must be presented within a year. Cal. Gov. Code § 911.2(a); *Bodde*, 32 Cal. 4th at 1239. The date of accrual is "the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented." Cal. Gov. Code § 901. "Generally, the right to bring and prosecute an action arises immediately upon the commission of the wrong claimed, and the statute of limitations runs from that time." *Collins v. County of Los Angeles*, 241 Cal. App. 2d 451, 454 (1966).

      The parties do not dispute that Plaintiffs' state law claims are personal injury claims subject to the six-month statute of limitations. Cal. Gov. Code § 911.2. The parties also do not dispute that the state law claims accrued on June 10, 2021, the date that Mistry interviewed Arrellano and Arrellano lost his custody rights. FAC ¶¶ 18, 20, 24. Arrellano acknowledges that he submitted the government tort claim on April 26, 2022,[2] which is outside the deadline. *Id.* at ¶

---

[2] Defendants assert that the claim was submitted on April 27, 2022. [Docket No. 53-1 (Request

26. However, Plaintiffs argue that they timely filed the government tort claim under either the discovery rule or equitable estoppel.

### 1. Discovery Rule

The discovery rule permits a plaintiff to demonstrate that the statute of limitations began running when the plaintiff discovered the injury rather than when the injury occurred. *Lyons v. Michael & Associates*, 824 F.3d 1169, 1173 (9th Cir. 2016). "[A] plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least 'suspects . . . that someone has done something wrong' to him." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) (citing *Jolly v. Eli Lilly & Co.*, *& Co.*, 44 Cal. 3d 1103, 1110 (1988)). A plaintiff relying on the discovery rule for delayed accrual of a cause of action "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (1999). "In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (citing *McKelvey*, 74 Cal. App. 4th at 160).

The FAC makes only conclusory allegations that they timely filed their complaint. FAC ¶ 26. At the April 11, 2024 hearing, Plaintiffs admitted that at the latest, Arrellano discovered the alleged injury on October 22, 2021 at a family court proceeding. Even if the discovery rule tolled the statute of limitations, Arrellano still did not submit the government tort claim within six months of October 22, 2021. The discovery rule does not salvage Plaintiffs' state law claims.

### 2. Equitable Estoppel

Alternatively, Plaintiffs argue that Defendants should be equitably estopped from asserting a statute of limitations defense because they deliberately misled Arrellano into believing that they took no action against him after Mistry's interview. Opp'n 12. Plaintiffs also allege that Defendants deliberately withheld Arrellano's access to his dependency investigation file so that he

---

for Judicial Notice, "RJN").] This inconsistency is not material to determining whether the claim is time-barred.

1  would not know of Mistry's misconduct. *Id.* Lastly, Plaintiffs contend that S.A. is a minor, and
2  that claims asserted by minors should be heard on the merits and not barred by the statute of
3  limitations. *Id.*

4  "It is well settled that a public entity may be estopped from asserting the limitations of the
5  [Government Claims Act] where its agents or employees have prevented or deterred the filing of a
6  timely claim by some affirmative act." *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 445
7  (1989). "Estoppel most commonly results from misleading statements about the need for or
8  advisability of a claim; actual fraud or the intent to mislead is not essential." *Id.* Estoppel applies
9  to a public entity "when the plaintiff establishes by a preponderance of the evidence: (1) the public
10 entity was apprised of the facts, (2) it intended its conduct to be acted upon, (3) plaintiff was
11 ignorant of the true state of facts, and (4) relied upon the conduct to his detriment." *Christopher*
12 *P. v. Mojave Unified Sch. Dist.,* 19 Cal. App. 4th 165, 170 (1993). To plead equitable estoppel,
13 the plaintiff "must point to some fraudulent concealment, some active conduct by the defendant
14 'above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the
15 plaintiff from suing in time.'" *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1052
16 (9th Cir. 2008) (quoting *Guerrero v. Gates,* 442 F.3d 697, 706 (9th Cir.2006)). The plaintiff
17 "must plead with particularity the facts which give rise to the claim of fraudulent concealment."
18 *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980).

19 Plaintiffs fall far short of these pleading requirements. For starters, Plaintiffs did not plead
20 equitable estoppel in the FAC, nor did they plead with particularity the facts giving rise to any
21 alleged fraudulent concealment, including what Mistry or DHHS did that was misleading "above
22 and beyond the wrongdoing upon which the plaintiff's claim is filed." *See Lukovsky*, 535 F.3d at
23 1052.[3] Plaintiffs also have not alleged that Arrellano was ignorant of the fact that Defendants
24 denied his custody rights. To the contrary, the FAC demonstrates that Arrellano knew Defendants
25 had taken action against him on or soon after June 10, 2021, because that is when he allegedly lost

---

[3] Plaintiffs make only a vague assertion in their opposition that Defendants "improperly represent that County took no action to injure Plaintiff." Opp'n 12. This is far too conclusory to show fraudulent concealment.

7

his custody rights.[4] FAC ¶ 20. Plaintiffs also have not alleged that Arrellano reasonably relied on Defendants' as-yet-unidentified fraudulent conduct in failing to file a timely government claim. *See Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 655 (2003) ("Reliance by the party asserting the estoppel on the conduct of the party to be estopped must have been reasonable under the circumstances.").

Next, Plaintiffs assert that Defendants withheld Arrellano's access to his dependency investigation file. Opp'n 12. This is not a basis for equitable estoppel. *See Munoz v. State of California*, 33 Cal. App. 4th 1767, 1785 (1995) (finding that the state's failure to provide plaintiffs with requested medical records was not fraudulent concealment). Finally, there is no merit to Plaintiffs' argument that claims asserted by minors should not be barred by the statute of limitations. Opp'n 12. Arrellano is an adult, so he would not benefit from any alleged special leniency regarding claims asserted by minors. The law is also clear that claims brought by minors may still be barred by the statute of limitations—in fact, the parent's knowledge of injury to the minor "demarcate[s] the outside time limit at which the cause of action accrued" in tort claims where the plaintiff is a minor. *V.C. v. Los Angeles Unified Sch. Dist.*, 139 Cal. App. 4th 499, 515 (2006). The statute of limitations applies to S.A. in the same way it does to Arrellano.

Plaintiffs fail to demonstrate equitable estoppel; their state law claims are therefore barred under the Government Claims Act. At the April 11, 2024 hearing, Plaintiffs asserted that they can amend the pleadings to establish the elements of equitable estoppel. The court grants Plaintiffs a final opportunity to allege specific facts supporting their argument that equitable estoppel should apply to their otherwise late-filed state law claims.

**B.     Negligence**

For the reasons just stated, Plaintiffs' negligence claim is time-barred. Even if it were

---

[4] In their opposition, Plaintiffs argue that Arrellano believed DHHS had taken no action against him because he lost custody in an unrelated family court proceeding, and he only learned later that the family court judge had relied on Mistry's Safety Plan in denying Arrellano custody. Opp'n 8. But in the April 11, 2024 hearing, Plaintiffs clarified their theory, asserting that the Safety Plan directly took custody away from Arrellano, and the family court proceedings happened after Arrellano had already lost custody. For purposes of this order, the court relies on Plaintiffs' counsel's representations at the hearing.

8

timely filed, Plaintiffs fail to state a negligence claim.

Tort claims against California public employees and entities are governed by statute. Cal. Gov. Code § 815. "The general rule is that an employee of a public entity is liable for his torts to the same extent as a private person . . . and the public entity is vicariously liable for any injury which its employee causes . . . to the same extent as a private employer." *Societa Per Azioni De Navigazione Italia v. City of Los Angeles,* 31 Cal. 3d 446, 463 (1982); *see* Cal. Gov. Code § 815.2(a). However, a public employee is immune from liability if the injury resulted from the employee's "exercise of the discretion vested in [the employee], whether or not such discretion be abused." Cal. Gov. Code § 820.2.

Juvenile court social workers like Mistry have broad discretion in making child dependency and custody decisions. *See Gabrielle A. v. Cnty. of Orange*, 10 Cal. App. 5th 1268, 1285 (2017), *as modified* (Apr. 18, 2017). There is a narrow exception to this discretionary immunity where the social worker commits "with malice": 1) perjury, 2) fabrication of evidence, 3) failure to disclose known exculpatory evidence, or 4) obtaining testimony by duress. Cal. Gov. Code § 820.21(a). "Malice" means conduct that is intended to cause injury to the plaintiff, or "despicable conduct" that is carried out with a willful and conscious disregard of the rights or safety of others. § 820.21(b). The FAC does not clearly set forth allegations demonstrating that Mistry's actions fall within the section 820.21(a) exception to discretionary immunity. If Plaintiffs are able to amend the complaint to address the timeliness issue, they are granted one final opportunity to amend the complaint to assert a negligence claim against Mistry that falls within section 820.21(a).

Plaintiffs also appear to assert that both Defendants are liable under Cal. Gov. Code § 815.6 for breach of mandatory duties. A public entity may be under a "mandatory duty" to protect against particular kinds of injuries, in which case the public entity is liable for injuries of that kind proximately caused by its failure to discharge the mandatory duty. Cal. Gov. Code § 815.6. Section 815.6 only imposes liability on a public entity for breach of a mandatory duty, and Plaintiffs cite to no law which would impose the same liability on the public entity's employee. *See* Cal. Gov. Code § 815.6.

9

In any event, the FAC does not contain allegations to support that Sonoma County breached a mandatory duty. The FAC alleges that Mistry, in the scope of her role as a Sonoma County employee, breached mandatory duties under Cal. Penal Code § 11172 and under the Fourteenth Amendment. FAC ¶¶ 28-29. Section 11172 states that "any person who makes a report of child abuse or neglect known to be false or with reckless disregard of the truth or falsity of the report is liable for any damages caused." § 11172(a). Plaintiffs do not sufficiently allege that Mistry made a false report of child abuse or neglect. In fact, Plaintiffs state that Mistry did *not* make a finding of abuse, and that Mistry truthfully "acknowledged in her investigative report that she did not have probable cause to substantiate the allegations of emotional abuse." FAC ¶ 20. Plaintiffs do not explain how Mistry's investigative report, which found that Arrellano did not abuse S.A., was also at the same time a report finding that Arrellano had abused or neglected S.A. As for the Fourteenth Amendment, "[g]eneral constitutional provisions . . . do not create an affirmative mandatory duty or provide implementing guidelines" which would expose the county to tort liability. *Rodriguez v. City of L.A.*, No. CV 11-01135 DMG (JEMx), 2015 WL 13260395, at *16 (C.D. Cal. May 8, 2015).

In sum, Plaintiffs fail to show that Defendants are liable for negligence. They are granted a final opportunity to amend this claim.

### C. Unruh Civil Rights Act

Plaintiffs' claim under the Unruh Act is also time-barred, as explained above. Moreover, Plaintiffs did not respond to the argument that they failed to sufficiently plead an Unruh Act claim, and thereby conceded the issue. *See, e.g., Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 fn. 4 (9th Cir. 2005) (finding that failure to raise claims in opposition was abandonment of those claims). The Unruh Act claim is dismissed with prejudice.

### D. Section 1983

Plaintiffs bring a section 1983 claim against Defendants under two theories: (1) violation of the Equal Protection Clause of the Fourteenth Amendment for gender discrimination, and (2) violation of the Due Process Clause of the Fourteenth Amendment for denying Arrellano's parental rights without a hearing and without probable cause. FAC ¶¶ 27-36. Defendants move to

10

dismiss the section 1983 claim against Mistry based on absolute or qualified immunity. *Id.* at 13-14. Defendants move to dismiss the claims against Sonoma County based on failure to state a claim under *Monell*. Mot. 11-12.

### 1. Failure to State a Claim

Although Defendants do not directly challenge the sufficiency of Plaintiffs' section 1983 claim against Mistry, it is necessary to analyze that claim before assessing the immunity defenses and examining *Monell* liability. The court finds that Plaintiffs fail to state a section 1983 claim under both the Equal Protection Clause and the Due Process Clause.

#### a. Equal Protection Clause

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).

Plaintiffs make only conclusory allegations that Mistry "denied [Arrellano] full access to services and rights of DHHS based upon his male gender." FAC ¶ 33. Plaintiffs do not assert any facts which would indicate that Mistry's actions against Arrellano were motivated by an intent to discriminate against men. Plaintiffs' assertion that DHHS employees engage in unlawful conduct against "similarly situated male fathers within the county" is conclusory. *Id.* at ¶ 22. Plaintiffs' allegation that DHHS provides more services to women than to men is also conclusory. *Id.* at ¶ 33. The court cannot draw a reasonable inference from the FAC that Mistry discriminated against Arrellano based on his gender. *See Iqbal*, 556 U.S. at 678.

#### b. Due Process Clause

"The constitutional right of parents and children to live together without governmental

11

interference is well established." *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). "The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Id.* Put differently, a parent has a "constitutionally protected right to the care and custody of his children," and the parent cannot be "summarily deprived of that custody without notice and a hearing, except when the children [are] in imminent danger." *Ram v. Rubin*, 118 F.3d 1306, 1310 (9th Cir. 1997).

Plaintiffs assert that Mistry used the Safety Plan to deny Arrellano's parental rights without a hearing and without probable cause. FAC ¶ 34. The FAC does not provide enough facts for the court to draw a reasonable inference to support that assertion. The FAC only contains a vague allegation that the Safety Plan "denied Plaintiff the right to have his overnight visits with [S.A.] for at least 30 days and denied Plaintiff custody of [S.A.] for 30 days." FAC ¶ 20. The FAC does not describe what the Safety Plan is, what it says, how it was enforced, or what part it played in the proceedings that led to Arrellano's alleged loss of custody of S.A. from June 10, 2021 through October 22, 2021. At the April 11, 2024 hearing, Plaintiffs claimed for the first time that the Safety Plan included a statement that there was an "immediate risk of injury to the child." Plaintiffs then argued that Mistry had no probable cause for making that statement. Plaintiffs do not explain why Mistry was required to have probable cause to make statements in the Safety Plan, nor do they explain what facts would lead to the inference that Mistry did not have probable cause at the time she made the Safety Plan. Plaintiffs were also vague about the extent of Arrellano's loss of custody. At the hearing, Plaintiffs claimed for the first time that the Safety Plan denied Arrellano's ability to see his child "without supervision," which suggests that Arrellano was still able to have contact with his child. The FAC does not clearly assert what Arrellano was prevented from doing and why this level of government interference violated due process.

Because Plaintiffs fail to state a section 1983 claim against Mistry under either the Equal Protection Clause or the Due Process Clause, the court need not reach questions of immunity. However, because the court grants leave to amend the 1983 claim, it briefly discusses immunity.

12

#### 2. Immunity

Social workers have "absolute immunity from suit when they make 'discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents.'" *Rieman v. Vazquez*, No. 22-56054, 2024 WL 927667, at *4 (9th Cir. Apr. 2, 2024) (citing *Miller v. Gammie,* 335 F.3d 889, 896 (9th Cir. 2003)). In determining whether absolute immunity applies, the court considers whether the acts or omissions of the social worker are "similar to discretionary decisions about whether to prosecute." *Id.* (citing *Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008) (per curiam)). Social workers do not have absolute immunity for "investigatory conduct" or for acts or omissions which have only a "loose relation" to the initiation of a dependency proceeding. *Id.*

In addition, social workers are government actors who may have qualified immunity. *See id.* at *5. "Qualified immunity shields government actors from civil liability pursuant to § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1151 (9th Cir. 2021)). "In determining whether an officer is entitled to qualified immunity, [courts] consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014).

##### a. Absolute Immunity

Defendants argue that absolute immunity shields Mistry from Plaintiffs' § 1983 claim because Mistry's offending conduct was related to the preparation or initiation of juvenile dependency proceedings. Mot. 13. However, *Rieman* limits a social worker's absolute immunity only to acts or omissions which are "similar to discretionary decisions about whether to prosecute." 2024 WL 927667, at *4. At most, Defendants have argued that the challenged conduct has a "loose relation" to Mistry's decision whether or not to initiative dependency proceedings against Arrellano. *See Rieman*, 2024 WL 927667, at *4. Therefore, absolute immunity may not apply to the section 1983 claim against Mistry, at least as the court currently understands Plaintiffs' claim.

##### b. Qualified Immunity

13

Plaintiffs do not dispute that social workers may be entitled to qualified immunity. However, they argue that Mistry is not entitled to qualified immunity in this case because she clearly violated Plaintiffs' constitutional rights. Opp'n 13.

To overcome qualified immunity, Plaintiffs must show not only that Mistry violated their constitutional rights, but also that the rights were "clearly established at the time of the officer's alleged misconduct" and "particularized to the facts of the case." *See Rieman*, 2024 WL 927667, at *5 (citations omitted). As discussed above, Plaintiffs have not adequately pleaded that Mistry violated their constitutional rights, let alone "clearly established" rights. *See Rieman*, 2024 WL 927667, at *5.

### 3. Monell

Plaintiffs fail to sufficiently plead a *Monell* claim against Sonoma County. A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692). However, the municipality may be held liable "only for '[its] *own* illegal acts.'" *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). It cannot be held vicariously liable for its employees' actions. *Id.* (citations omitted). To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479-80 (emphasis in original). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). Such policy or practice must be a "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). An official municipal policy may be either formal or informal. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988) (acknowledging that a plaintiff could show that "a municipality's actual policies were different from the ones that had been announced.").

14

1   In the Ninth Circuit, a municipality may be liable under section 1983 under three possible theories. *Rodriguez v. Cnty. Of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). The first is where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Id*. (quoting *Monell*, 436 U.S. at 694). Second, "a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Finally, a municipality may be liable under section 1983 if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 802-03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal quotation marks and citation omitted)).

Plaintiffs appear to plead the first theory: that they were injured by a government "policy or custom." *See Rodriguez*, 891 F.3d at 802. Plaintiffs make conclusory assertions that Sonoma County had "an unstated policy of not disclosing rights to male fathers and coercing male fathers to consent to counseling," and that it engaged in "a pattern of harassment and intimidation against men." FAC ¶¶ 19, 22. But Plaintiffs cite no facts to support this other than conclusory allegations about Mistry's individual conduct regarding Arrellano. Absent a formal policy, *Monell* liability "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996). At best, Plaintiffs have alleged only an isolated incident.

At the July 13, 2023 hearing on the first motion to dismiss the original complaint, the court ordered Plaintiffs to clearly allege in the FAC the ways in which Mistry violated the Constitution and identify under which theory of *Monell* liability Sonoma County is liable for Mistry's alleged actions. [Docket No. 34.] The FAC once again fails to allege more than conclusory allegations.

15

Plaintiffs are granted a final opportunity to amend their *Monell* claim.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. Plaintiffs are granted a final opportunity to amend their complaint to address the deficiencies identified in this order. The amended complaint is due **June 18, 2024**.

**IT IS SO ORDERED.**

Dated: May 28, 2024

_____
Donna M. Ryu
Chief Magistrate Judge