UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRANCISCO ARRELLANO, et al.,

              Plaintiffs,

      v.

SONOMA COUNTY, et al.,

              Defendants.

Case No.  23-cv-00187-DMR

**ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Re: Dkt. No. 62

Plaintiffs Francisco Arrellano and his minor son S.A., by and through his guardian ad litem Arrellano, bring this second amended complaint ("SAC") against Defendants Sonoma County and Deena Mistry.  [Docket No. 61 (SAC).]  Defendants move to dismiss.  [Docket No. 62 (Mot.).]  This motion is appropriate for resolution without a hearing.  Civ. L.R. Rule 7-1(b).  For the following reasons, the motion is granted in part and denied in part.

I.      **BACKGROUND**

      A.      **Statement of Facts**

Plaintiffs make the following allegations in the SAC, all of which are taken as true for purposes of this motion.[1]  Arrellano is S.A.'s father and shares joint legal and physical custody of him with S.A.'s mother.  SAC ¶ 1.  Deena Mistry was a social worker employed at the Sonoma County Department of Health and Human Services ("DHHS") to investigate child dependency and child custody issues within the County of Sonoma.  *Id.* at ¶ 8.  Sonoma County is the government entity that owned, operated, and controlled DHHS and employed Mistry.  *Id.* at ¶ 7.  Plaintiffs allege that Defendants wrongfully caused Arrellano to lose custody of S.A. between June 10, 2021 and October 22, 2021.  *Id.* at ¶ 34.

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

In June 2021, Arrellano enjoyed shared custody over S.A. with S.A.'s mother, Chelsea Malen, and lawfully had S.A. for overnight visits each weekend and every alternating Thursday. *Id.* at ¶ 11.  On June 2, 2021, Malen reported to DHHS that S.A. was vomiting due to anxiety and that his anxiety was caused solely by Arrellano.  *Id.* at ¶ 15.  Arrellano alleges that this report was false because other incidents had caused S.A.'s anxiety, incidents which Arrellano had previously reported to DHHS.  *Id.* at ¶¶ 13-15.  After DHHS received Malen's report of possible abuse on June 2, 2021, Mistry began an investigation.  *Id.* at ¶ 17.

Arrellano alleges that Mistry had determined by June 10, 2021 that S.A. was not in danger of imminent physical or emotional harm.  *Id.* at ¶ 22.  Despite this, Mistry continued the investigation and interviewed Arrellano on June 10, 2021.  *Id.* at ¶¶ 23-24.  During the interview, Mistry engaged in coercive and threatening conduct against Arrellano.  She presented him with a family counseling form and told him that if he did not sign up for counseling for a term of five years, she would take custody of S.A. away from him.  *Id.* at ¶¶ 25, 28.  However, Mistry did not disclose that if Arrellano agreed to counseling but then failed to appear at any one of his counseling appointments, his parental rights could be summarily taken away.  *Id.* Arrellano refused to sign the counseling form.  *Id.* at ¶ 28.  In the report Mistry later filed about the investigation, she falsely stated that she had made full disclosures about the counseling form to Arrellano.  *Id.* at ¶ 26.

After her interview with Arrellano, Mistry drafted an emergency safety plan which stated that Mistry was taking S.A. away from Arrellano for the next 30 days (June 10, 2021 until July 10, 2021) to support her investigation.  *Id.* at ¶ 29.  Mistry provided the safety plan to Malen, connected Malen with an attorney, and directed Malen to file an emergency custody order in family court to take custody of S.A. away from Arrellano.  *Id.* at ¶¶ 29, 31.  Malen did so, and the family court relied on the safety plan to deny Arrellano his visitation and overnight custody rights over S.A.  *Id.* at ¶ 34.  Arrellano was ultimately deprived of his custody rights from June 10, 2021 to October 22, 2021.  *Id.*

Plaintiffs allege that the investigation ended on June 10, 2021[2] and that Defendants took no

---

[2] Defendants request that Mistry's investigative report be incorporated by reference and argue that,

steps to interview any other witnesses after Mistry met with Arrellano on June 10, 2021. *Id.* at ¶ 29. The investigation concluded there was no probable cause to substantiate the allegations of abuse or any immediate threat to S.A. *Id.* Plaintiffs assert that the safety plan therefore falsely represented there was an ongoing DHHS investigation that necessitated taking custody of S.A. away from Arrellano from June 10 to July 10, 2021. *Id.*

Arrellano was not aware of the safety plan or the full extent of Mistry's conduct until October 22, 2021, after the family court informed him that it had relied on the safety plan to grant Malen's emergency custody order, and after Plaintiff received S.A.'s dependency file from DHHS. *Id.* at ¶¶ 34-35. Before October 22, 2021, Defendants had represented to Arrellano that DHHS had taken no action against him. *Id.* In addition, Plaintiffs allege that Defendants "intentionally delayed for several months" before disclosing S.A.'s dependency file to Arrellano on October 22, 2021, and that the file was "heavily redacted such that Plaintiff did not know the full details of this incident." *Id.* at ¶¶ 35, 38.

Plaintiffs allege that Sonoma County "has an unstated policy of not disclosing rights to male fathers and coercing male fathers to consent to counseling or face the threat of losing their custodial and visitation rights." *Id.* at ¶ 28. Plaintiffs assert that Defendants do not take these actions against women. *Id.* Plaintiffs also claim that Mistry provided additional advice and a legal referral to Malen, but not to Arrellano, because Arrellano is a man. *Id.* at ¶ 32.

Finally, Plaintiffs allege that the safety plan denied them due process by effectively taking custody of S.A. away from Arrellano without probable cause and without a hearing. *Id.* at ¶¶ 28, 31.

---

because the report states that the Mistry's investigation ended on July 14, 2021, the court should accept July 14 as the actual date the investigation ended. Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). However, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1014. Plaintiffs assert that the investigative report contained false statements and that Mistry misrepresented the date she ended her investigation. Assuming the truth of facts stated in the report would take Mistry's word over Plaintiffs' and would "override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage." *Id.* The court declines to consider the document for the purpose requested by Defendants.

United States District Court
Northern District of California

B.     **Procedural History**

On April 26, 2022, Arrellano filed a claims form against Defendants pursuant to the Government Claims Act.  SAC ¶ 36.  On October 19, 2022, Plaintiffs brought this action in Sonoma County Superior Court, and it was later removed to this court.  [Docket No. 1.] Defendants moved to dismiss the complaint, [Docket No. 11], and the court granted the motion to dismiss with leave to amend on July 13, 2023.  [Docket No. 34.]  At the July 13, 2023 hearing, the court ordered that in the first amended complaint (FAC), Plaintiffs had to allege whether and how they complied with the Government Claims Act, including specific facts explaining the history of their claim presentation to Sonoma County and the dates of the alleged events giving rise to their claims.  *Id.*  The court also ordered Plaintiffs, if they planned to assert a *Monell* claim in the FAC, to clearly allege the ways in which Mistry violated the Constitution and identify the specific theory or theories of *Monell* liability under which Sonoma County is liable for Mistry's alleged actions.  *Id.*

On February 16, 2024, Plaintiffs filed the FAC.  [Docket No. 52.]  Defendants again moved to dismiss.  [Docket No. 53.]  In the May 28, 2024 order granting the motion, the court gave Plaintiffs a final opportunity to allege specific facts to support their claims.  [Docket No. 60.]

Plaintiffs' SAC asserts two claims: 1) negligence and 2) violation of the Fourteenth Amendment under 42 U.S.C. § 1983.

## II.     LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief."  *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion.  *Lee*, 250 F.3d at 688 (citation and quotation marks omitted).  However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith*, 307 F.3d at 1125-26.  The court need not accept as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading.  Fed. R. Civ. P. 15(a)(1).  After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied with extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted).  However, leave to amend may be denied where the complaint "could not be saved by any amendment," i.e., "where the amendment would be futile."  *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

## III.     DISCUSSION

### A.     Negligence

Plaintiffs' negligence claim is subject to the Government Claims Act, which requires that personal injury claims be presented to the public entity within six months of accrual.  Cal. Gov.

Code §§ 945.4, 950.6, 911.2(a). "Generally, the right to bring and prosecute an action arises immediately upon the commission of the wrong claimed, and the statute of limitations runs from that time." *Collins v. County of Los Angeles*, 241 Cal. App. 2d 451, 454 (1966). Here, Plaintiffs' claim accrued on June 10, 2021, the date that Mistry interviewed Arrellano and Arrellano lost his custody rights. Arrellano did not present a government claim until April 26, 2022.

Plaintiffs argue that Defendants should be equitably estopped from raising the statute of limitations defense because their own conduct caused Arrellano's delay. [Docket No. 63 (Opp'n).] "It is well settled that a public entity may be estopped from asserting the limitations of the [Government Claims Act] where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act." *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 445 (1989). A party seeking to invoke equitable estoppel must establish that "(1) the party to be estopped . . . [was] apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party . . . must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *J.M. v. Huntington Beach Union High Sch. Dist.*, 2 Cal. 5th 648, 656 (2017) (citing *Driscoll v. City of Los Angeles,* 67 Cal. 2d 297, 305 (1967)). The act or omission must be one that constitutes a non-disclosure or misrepresentation of material fact, rather than law. *Millview Cty Water Dist. v. State Water Resources Control Bd.*, 32 Cal. App. 5th 585, 599 (2019). To plead equitable estoppel, a plaintiff "must point to some fraudulent concealment, some active conduct by the defendant 'above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) (quoting *Guerrero v. Gates,* 442 F.3d 697, 706 (9th Cir.2006)). Facts giving rise to fraudulent concealment must be pleaded with particularity. *Jackson v. City of Modesto*, No. 1:21-CV-0415 AWI EPG, 2022 WL 3083649, at *5 (E.D. Cal. Aug. 3, 2022). When a public entity is the party to be estopped, "there must be affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government." *Bey v. City of Oakland*, No. 14-CV-01626-JSC, 2016 WL 1639372 (N.D. Cal. Apr. 26, 2016).

To invoke equitable estoppel, Plaintiffs make two allegations.  First, Defendants misrepresented to Arrellano that no action was taken against him, when in fact Mistry had taken action to remove S.A. from Arrellano's custody using the safety plan.  SAC ¶ 35.  Second, Defendants delayed disclosure of S.A.'s dependency file and only disclosed a redacted version of the file.  SAC ¶¶ 35, 38.

The first allegation is insufficient to support equitable estoppel.  Arrellano cannot plead that he was "ignorant of the true state of facts."  *See Huntington Beach Union*, 2 Cal. 5th at 656. Plaintiffs themselves allege that Mistry told Arrellano she was going to take away his custody in retaliation for his refusing to agree to family counseling.  SAC ¶ 28.  Later in the SAC, Plaintiffs allege that, at some time "before the family court hearing," Mistry told Arrellano that the allegations of abuse had been found to be unsubstantiated.  SAC ¶ 35.  It is not clear how Mistry's representation was false—Mistry's report did find that the allegations of abuse were unsubstantiated, and DHHS did not initiate a juvenile dependency proceeding against Arrellano. In light of their own allegations, Plaintiffs cannot meet their burden to establish equitable estoppel based on a theory that Mistry intended Arrellano to believe she had nothing to do with his loss of custody.

Plaintiffs' second estoppel theory rests on their allegation that Defendants withheld S.A.'s dependency file until four months after the investigation was completed.  "Stonewalling" such as refusing requests for reports about the nature of a claim may be grounds for estoppel.  *See Est. of Amaro v. City of Oakland*, 653 F.3d 808, 814 (9th Cir. 2011).  Plaintiffs' allegation falls short of "stonewalling"—DHHS did not refuse to provide the dependency file, it just provided it a few months after the conclusion of the investigation.  Tellingly, Plaintiffs do not allege that the redactions prevented Plaintiffs from understanding Mistry's role in the removal of custody from Arrellano.  In short, Plaintiffs have not pleaded a viable estoppel theory.

Plaintiffs have received two opportunities to amend their complaint to specifically plead equitable estoppel.  Further amendment is futile. Plaintiffs' negligence claim is dismissed with prejudice as time-barred.

United States District Court
Northern District of California

**B.     Section 1983**

Plaintiffs' section 1983 claim alleges that Defendants violated the Due Process and the Equal Protection Clauses of the Fourteenth Amendment.

**1.     Equal Protection**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Typically, claims under the Equal Protection Clause challenge "governmental classifications that 'affect some groups of citizens differently than others.'" *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S. 229, 239–40 (1976)).

Plaintiffs make only conclusory assertions that Mistry treated Arrellano differently than Malen because Arrellano is a man, and that Sonoma County "has an unstated policy" of treating fathers differently than mothers. Plaintiffs do not cite supporting any facts other than Mistry's interactions with Arrellano and Malen in this case. Nothing in those allegations evinces an intent by Mistry or Sonoma County to discriminate based on sex.

Plaintiffs failed to allege an equal protection claim. Because further amendment is futile, the claim is dismissed with prejudice.

**2.     Monell**

A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692). However, the municipality may be held liable "only for '[its] *own* illegal acts.'" *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

United States District Court
Northern District of California

It cannot be held vicariously liable for its employees' actions.  *Id.* (citations omitted).  To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury."  *Id.* (quoting *Monell*, 436 U.S. at 691).  "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."  *Pembaur*, 475 U.S. at 479-80 (emphasis in original).  Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick*, 563 U.S. at 61 (citations omitted).  Such policy or practice must be a "moving force behind a violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694).  An official municipal policy may be either formal or informal.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988) (acknowledging that a plaintiff could show that "a municipality's actual policies were different from the ones that had been announced.").

Plaintiffs' *Monell* allegations are tied to their unviable equal protection claim.  As Plaintiffs have received ample opportunities for amendment, all municipal liability claims are dismissed and judgment is entered in favor of Sonoma County.

### 3.     Due Process

Plaintiffs allege that Mistry violated due process by temporarily suspending Arrellano's custodial and visitation rights without a hearing and without probable cause.

"It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under [42 U.S.C. § ] 1983."  *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 441 (9th Cir. 2010) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001)).  However, "[t]he interest of the parents must be balanced against the interests of the state and, when conflicting, against the interests of the children."  *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1125 (9th Cir. 1989).  The right to familial association has both a substantive and a procedural component.  *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018).  Where a state officer intervenes in an ongoing custody dispute, substantive due process is implicated if the

plaintiff can show "conscience shocking behavior by the government." *Murguia v. Langdon*, 61 F.4th 1096, 1118 (9th Cir. 2023), *cert. denied sub nom. Tulare v. Murguia*, 144 S. Ct. 553, 217 L. Ed. 2d 295 (2024) (citing *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006)).  Where the state has a legitimate interest in interfering with a parent-child relationship, the state must "provide the parents with fundamentally fair procedures." *Santosky v. Kramer*, 455 U.S. 745, 754 (1982).

Plaintiffs allege that Mistry completed her abuse investigation on June 10, 2021, the date of her final interview, and found nothing but a "moderate harm of emotional stress."  SAC ¶ 22.  However, Mistry instructed Malen to file an emergency custody order, and Mistry represented to the family court (through the safety plan) that there was an ongoing abuse investigation which justified taking S.A. from Arrellano's custody for 30 days.  Plaintiffs allege that the only reason Mistry made this representation was to retaliate against Arrellano for refusing to agree to family counseling.  SAC ¶ 31.  Taking these allegations as true, Mistry's representation to the family court of an ongoing abuse investigation was false, because her investigation in fact ended on June 10, 2021.

Defendants dispute that Mistry made a false representation, arguing that Mistry's abuse investigation did not conclude until July 14, 2021.  As noted above, the court cannot consider Defendants' proffered facts about the investigation timeline at the pleadings stage.  Defendants make no other argument regarding Plaintiffs' due process claim.

"Our caselaw clearly establishes that, as part of the right to familial association, parents and children have a 'right to be free from judicial deception' in child custody proceedings and removal orders." *David v. Kaulukukui*, 38 F.4th 792, 800 (9th Cir. 2022) (citing *Greene v. Camreta*, 588 F.3d 1011, 1034 (9th Cir. 2009), vacated in part on other grounds, 563 U.S. 692, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011), 661 F.3d 1201 (9th Cir. 2011)).  Defendants offer no valid argument why *Kaulukukui* should not apply to this case.  Therefore, the court denies the motion to dismiss Plaintiffs' due process claim as to the safety plan.

However, that claim only covers a limited time period.  Plaintiffs have not alleged that in temporarily removing Arrellano's custody rights, the family court relied on any misrepresentations other than Mistry's assertion in the safety plan that her investigation was ongoing.  The safety plan

United States District Court
Northern District of California

1    only contemplated taking custody of S.A. from Arrellano from June 10 to July 10, 2021.  The

2    family court denied Arrellano's custody rights until October 22, 2021, months after the safety plan

3    had expired, for reasons not explained in the SAC.  Plaintiffs' allegations only support a due

4    process violation from June 10, 2021 to July 10, 2021.[3]

5         Plaintiffs' allegations regarding Mistry's threats and failures to make full disclosures

6    regarding the family counseling form do not implicate due process.  SAC ¶ 28.  Plaintiffs concede

7    that Arrellano did not sign the form, and "the mere threat by a social worker to take away a child

8    is insufficient to support a Fourteenth Amendment claim."  *Dees v. Cnty. of San Diego*, 960 F.3d

9    1145, 1153 (9th Cir. 2020).  Mistry's allegedly coercive conduct regarding the counseling form is

10   not a separate due process claim.

11        Finally, Plaintiffs appear to argue that their procedural due process rights were violated by

12   citing the California Welfare and Institutions (W&I) Code sections 300, 301, 306, 315, and 319,

13   which proscribe mandatory procedures pertaining to dependent children.  None of these statutes

14   are applicable here because the state never declared S.A. to be a dependent child of the juvenile

15   court.  Plaintiffs admit that DHHS never initiated dependency proceedings over S.A.  Although

16   custody temporarily was taken from Arrellano, this was pursuant to a private custody dispute in

17   family court.  The family court follows the California Family Code, not the W&I Code.  *See In re*

18   *Chantal S.*, 13 Cal. 4th 196 (1996) (discussing the distinction between juvenile court and family

19   court).  In any event, a state statute prescribing certain procedures does not necessarily create a

20   constitutional right to those procedures.  *See James v. Rowlands*, 606 F.3d 646, 657 (9th Cir.

21   2010) (finding that W&I Code §§ 307.4 and 11400 did not create procedural rights protected by

22   the due process clause).

23        Plaintiffs have stated a due process claim only with respect to the alleged

24

_____

25   [3] Plaintiffs also point to various omissions in Mistry's investigative report that were allegedly
     material to a finding that Arrellano did not abuse S.A.  *See, e.g.,* SAC ¶¶ 26, 30.  These allegations
26   are immaterial to Plaintiffs' due process claim.  Plaintiffs never allege that the family court relied
     on Mistry's investigative report.  Plaintiffs also concede that the investigative report concluded
27   that Arrellano did not abuse S.A.  Therefore, any omissions in the investigative report do not
     implicate due process.
28

United States District Court
Northern District of California

misrepresentation Mistry made in the safety plan submitted to the family court that her abuse investigation was ongoing when in fact it had concluded.  This claim covers the period between June 10, 2021 and July 10, 2021.

### 4. Immunity

Mistry argues that both absolute and qualified immunity apply to shield her from liability in her role as a social worker.  She bases her entire argument on the factual assertion that she made no false representations in the safety plan because the investigation ended on July 14, 2021, not June 10, 2021 as alleged by Plaintiffs.  As discussed above, the court cannot consider this factual argument at the pleadings stage.

As the court held in its previous order, social workers do not have absolute immunity for "investigatory conduct" or for acts or omissions which have only a "loose relation" to the initiation of a dependency proceeding.  *Rieman v. Vazquez*, No. 22-56054, 2024 WL 927667, at *4 (9th Cir. Apr. 2, 2024).  Mistry never initiated dependency proceedings.  At most, her interference with Malen's and Arrellano's family court proceedings amounts to "investigatory conduct," as she claimed she was separating S.A. and his father to support her abuse investigation.  Therefore, absolute immunity does not apply.

Social workers are government actors who may have qualified immunity.  *See Rieman*, 2024 WL 927667, at *5.  "Qualified immunity shields government actors from civil liability pursuant to § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id.* (quoting *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1151 (9th Cir. 2021)).  "In determining whether an officer is entitled to qualified immunity, [courts] consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct."  *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014).

Plaintiffs have alleged a violation of due process based on judicial deception.  Since at least 2016, "well before" the events of this case, the law has "clearly established that a parent and child's constitutional right to familial association is violated when a state official interferes with a parent's lawful custody through judicial deception."  *David v. Kaulukukui*, 38 F.4th 792, 804 (9th

12

Cir. 2022) (citing *Benavidez v. County of San Diego*, 993 F.3d 1134, 1141 (9th Cir. 2021)). Plaintiffs have alleged that Mistry made false statements in the safety plan that misled the family court judge.  Therefore, Mistry is not entitled to qualified immunity at this stage.

## IV.    CONCLUSION

Plaintiffs have adequately pleaded a section 1983 claim under the Due Process Clause of the Fourteenth Amendment against Mistry, but only as to the alleged false statements in the safety plan and only between June 10, 2021 and July 10, 2021.  All other claims are dismissed with prejudice.  The claims against Sonoma County are dismissed and judgment is entered in its favor.

**IT IS SO ORDERED.**

Dated: August 16, 2024



Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California